UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GILBERT BROWN, JR.,          ]
                             ]
    Plaintiff,                ]
                             ]
    vs.                       ]    2:09-CV-2377-LSC
                             ]
MICHAEL J. ASTRUE,           ]
Commissioner,                ]
Social Security Administration, ]
                             ]
    Defendant.                ]

MEMORANDUM OF OPINION

I.  Introduction.

Plaintiff, Gilbert Brown, Jr., appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Mr. Brown timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Brown was fifty-nine years old at the time of the Administrative

Law Judge's ("ALJ's") decision, and he has a sixth grade education. (Tr. at 21, Doc. 11 at 5.)  His past work experience includes employment as a tank maintenance mechanic and a racker.  (Tr. at 22, 92, Doc. 11 at 5.)  Mr. Brown claims that he became disabled on September 25, 2003, due to degenerative joint disease of the left knee and hypertension.  (Tr. at 24-25, 32.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends

on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. (*Id.*) If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to

consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Brown "met the insured status requirements of the Social Security Act through June 30, 2008." (Tr. at 13.) He further determined that Mr. Brown had not engaged in substantial gainful activity since the alleged onset of his disability. *Id.* According to the ALJ, Plaintiff's degenerative joint disease, hypertension, and atypical chest pain are considered "severe" based on the requirements set forth in the regulations. *Id.* However, he found that Plaintiff did not have an impairment or combination of impairments that either met or medically equaled any of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that Mr. Brown has the residual functional capacity "to perform the full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c)." *Id.*

The ALJ then determined that Plaintiff "is capable of performing past relevant work as a maintenance worker and racker. This work does not

require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. at 16.) Accordingly, the ALJ entered a finding that Plaintiff has "not been under a disability, as defined in the Social Security Act, from September 25, 2003 through the date of this decision." *Id.*

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act

with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.  Discussion.

Mr. Brown alleges that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law for three

reasons. (Doc. 11 at 8-14.) First, Plaintiff claims "the ALJ's findings that the claimant is capable of medium work is not based upon substantial evidence nor the proper legal standards." *Id*. at 8. Second, Plaintiff contends "the ALJ erred in failing to evaluate Brown's obesity in the context of impact on his pain and residual functional capacity." *Id*. at 10. Third, Plaintiff claims "the ALJ's finding that Brown is capable of performing his past work as a tank maintenance worker and racker is not based upon substantial evidence nor the proper legal standard." *Id*. at 11.

    A.    Residual Functional Capacity.

Plaintiff alleges the ALJ failed to follow Social Security Regulations in determining Plaintiff's RFC. An individual's RFC is an example of an issue that is administrative in nature, not a medical issue. Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *2 (S.S.A.). The Commissioner decides administrative issues and the Commissioner's regulations put the ultimate responsibility of determining RFC with the ALJ. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c); SSR 9605p, 1996 WL 374183 at *5. According to Soc. Sec. Rul. 96-8p, "[t]he RFC

assessment must always consider and address medical source opinions. If an RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184 (S.S.A.). His decision must be based not only upon the medical evidence, but upon all evidence in the record. *Id*. Further, while medical opinions are to be weighed by the ALJ, an RFC finding will not be invalidated due to the absence or discrediting of a medical opinion. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

In determining Plaintiff's RFC, the ALJ relied primarily upon the opinion of the consultative physician, Dr. Kevin Lasseigne, who examined Plaintiff in August 2007. (Tr. at 15-16, 165-69.) Dr. Lasseigne noted that Plaintiff was not in any apparent distress, and although he was morbidly obese, Plaintiff appeared comfortable during the exam and was able to easily get onto the examination table, bend over and get back up, and remove his shoes. *Id*. at 15, 167. Dr. Lasseigne further reported that Plaintiff "exhibited a slight antalgic gait to the right when walking. Heel to knee was within normal limits. [Plaintiff] was able to heel walk and toe walk

with assistance. Tandem gait was done within normal limits. He was able to squat approximately 1/3 of the way down before he had to rise back up secondary to pain difficulties." *Id*. Additionally, Dr. Lasseigne did not find any instability in Plaintiff's knees bilaterally and determined Plaintiff had a strength of 5/5 throughout his upper and lower extremities. Dr. Lasseigne further noted that, while Plaintiff used a cane, the cane was not prescribed by a physician and Plaintiff did not use it in the proper manner. Although Plaintiff guarded his lower extremities, making it difficult to perform an accurate examination of his knees bilaterally, Dr. Lasseigne did not find any swelling, effusion, warmth, or erythema of his knees, and x-rays of the left knee did not reveal any fractures or soft tissue abnormalities. *Id*. at 15, 167-69. It was noted that Plaintiff did have some mild degenerative changes and Dr. Lasseigne diagnosed Plaintiff with occipital neuralgia, right trochanteric bursitis, and bilateral knee pain. *Id*. at 15, 169. However, the ALJ correctly noted that Dr. Lasseigne's examination "does not reveal any abnormalities which would limit [Plaintiff's] physical functional capacity to perform work activity." *Id*. at 16.

In addition to Dr. Lasseigne's opinion, there is further medical evidence which supports the ALJ's decision. Three months after his alleged disability onset date, Plaintiff was treated in the emergency room for nothing more than a toothache. (Tr. at 133.) In September 2004, Plaintiff went to the emergency room, complaining of knee pain. At that time, he was diagnosed with "possible gouty arthritis." *Id*. at 177-78; Doc. 11 at 6. Other hospital visits were for chest pain in April 2006 (electrocardiogram was abnormal, but chest CT scan was normal) (*Id*. at 155-56, 158); kidney stones in September 2006, at which time the doctor noted normal musculoskeletal findings and normal chest x-ray (*Id*. at 140, 152-53); and complaints of headaches, sleep difficulty, kidney pain, shortness of breath, back soreness and numbness on various visits in late 2006 and early 2007 (*Id*. at 135-40). However, while Plaintiff received medical treatment on several other occasions, only once after September 2004 did doctors note complaints of knee pain. Notes from Cooper Green Hospital, dated October 30, 2006, state "will help relieve knee pain if [Plaintiff] can [lose] weight." *Id*. at 139.

Additionally, the ALJ considered the opinion of the State Agency medical consultant, Dr. Samuel H. Chastain. (Tr. at 16.) Dr. Chastain noted that the field office did not observe any objective physical limitations or distress. *Id*. at 170. Based on the medical evidence before him, which included Dr. Lasseigne's notes, Dr. Chastain "found no objective findings that [Plaintiff] had a severe impairment that would pose more than a minimal limitation on his ability to perform work activity." *Id*. at 16, 70.

Based on the evidence as discussed, the ALJ correctly determined Plaintiff's RFC.

B.  Obesity.

Plaintiff next contends that the ALJ failed to properly evaluate his obesity as required by SSR 02-1p. (Doc. 11 at 10.) SSR 02-01p recognizes that obesity can exacerbate other conditions, that it can cause limitations in all exertional and postural functions; and that it can affect an individual's ability to sustain routine movement and work activity. The Ruling recognizes that an obese person's body has to work harder at rest, making it harder to perform additional work, and that obesity must be considered

when determining RFC.  *See* SSR 02-1p, 2002 WL 3102606 (S.S.A.).

However, it is the functional limitations imposed by a condition, not the mere diagnosis, that determines disability.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (11th Cir. 1998).  In addition, a severe impairment is an impairment which significantly limits a claimant's ability to do basic work activities.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 404.1521(a), 416.920(a)(4)(ii), 416.920(c), 416.921(a); *Bridges v. Bowen*, 815 F.2d 622, 625 (11th Cir. 1987); *McCruter v. Bowen*, 791 F.2d 1544, 1547 ("the severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.")

In this case, Plaintiff has made no showing that his obesity would prohibit him from performing the exertional demands of medium work. Plaintiff sets forth only that obesity can cause limitations that may affect a person's weight bearing joints and sleep (Doc. 11 at 11).  However, Plaintiff failed to provide any medical evidence demonstrating that his

obesity causes or exacerbates any specific limitations.[1] While Dr. Lasseigne found Plaintiff to be morbidly obese, which the ALJ did consider (Tr. at 15), Dr. Lasseigne's examination "did not reveal any abnormalities which would limit the claimant's physical functional capacity to perform work activity." (Tr. at 16,165-69.) Furthermore, there does not appear to be any medical evidence where any other doctor addressed specific limitations that are caused by Plaintiff's obesity.

The record reveals that the ALJ adequately considered Plaintiff's obesity. Substantial evidence supports the ALJ's determination that Plaintiff is capable of performing a full range of medium-level work.

C.   Past Work.

Finally, Plaintiff argues that the ALJ's finding that Plaintiff can return

---

[1] In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence she believes will prove her alleged disability. *See* 20 C.F.R. § 404.1512(a) and (c). Moreover, the claimant's burden is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

to his past relevant work provided no specific findings or analysis regarding the physical and mental demands of his past work, as required by SSR 82-62. (Doc. 11 at 14.) SSR 82-62 provides, in part:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. findng of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386 (S.S.A.).

The Commissioner "acknowledges that the ALJ's step four finding is not supported by substantial evidence" because "the basis for the ALJ's determination that [past relevant jobs as a tank maintenance worker and racker] require no more than a medium-level of exertion is not clear from the record." (Doc. 12 at 13, n.4.) However, the Commissioner further contends that "had the ALJ proceeded to step five of the sequential disability evaluation, the Grids would have applied to make a disability

determination" and the Grids would direct a finding of "'not disabled'." *Id.* at 12-13. Thus, the Commissioner alleges that it is harmless error that the ALJ found Plaintiff was able to perform his past relevant work. *Id.* at 13. However, while the Commissioner may be correct that the Grids would direct a finding of "not disabled," that is for the ALJ to determine. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Therefore, this Court remands the instant case to the ALJ to make a specific finding of fact as to the physical and mental demands of the past job/occupation in accordance with SSR 82-62.

IV.  Conclusion.

Upon review of the administrative record, and considering all of Mr. Brown's arguments, the Court finds that the ALJ's decision is not supported by substantial evidence.  For the foregoing reasons, the ALJ's denial of benefits is **vacated**, and the case is **remanded** to the ALJ for further proceedings consistent with this opinion.  A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 11th day of March 2011.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671